SCOTT KEITH WILSON, Federal Public Defender (#7347)
ROBERT L. STEELE, Assistant Federal Defender (#5546)
FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah   84101
Telephone: (801) 524-4010
Facsimile: (801) 524-4060

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN PLATO MCRAE,<br><br>Defendant. | **DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF 11(c)(1)(C) AGREEMENT**<br><br>Case No.  2:16 CR 566 TS<br><br>Honorable Ted Stewart |
|---|---|

Defendant, Stephen Plato McRae, by and through his attorney of record, Robert L. Steele, submits the following Sentencing Memorandum and Motion in Support of 11(c)(1)(C) Agreement.

### I.  PROPOSED SENTENCE

*Pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are proposing to the Court that a 96 month sentence is a reasonable sentence under these circumstances.*[1] The recommended guideline range in the present case is 168 to 210 months.[2]

---

[1] See paragraph 103 of the Presentence Report, hereinafter "PSR."

[2] See paragraph 100 of the PSR.

This includes the application of the 12-level enhancement for Federal crime of terrorism plus the increase to a criminal history category VI pursuant to U.S.S.G. § 3A1.4(a).[3]

A Federal crime of terrorism must be one from a list of crimes described in 18 U.S.C. § 2332b(g)(5)(B); Mr. McRae's conviction under 18 U.S.C. § 1366(a) is on that list. A Federal crime of terrorism must also be "an offense that-(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.[4] In his own words, which were recorded by the confidential source in piecemeal fashion, Mr. McRae:

> was trying "to help save the earth from humans who are 'hyper exploiting" it resources and causing 'abrupt climate change;'"[5]
>
> "was committing the criminal activity . . . to 'destroy industrial capitalism' and to 'do millions of dollars of damage to the fossil fuel industry;'"[6] and
>
> was committing felonies against the "corporate state," which term was left undefined by Mr. McRae but appeared to be focused on corporations with the power of a government.[7]

There is no evidence in the record that the intended target of Mr. McRae's conduct was anything other than corporate America and the fossil fuel industry, as opposed to any governmental entity.[8] His actual target, GarKane Energy, is a privately owned energy cooperative.[9]

---

[3] See paragraphs 44 and 62 of the PSR.

[4] See 18 U.S.C. § 2332b(g)(5)(A).

[5] See paragraph 14 of the PSR.

[6] See paragraph 15 of the PSR.

[7] See paragraph 15 of the PSR.

[8] *See United States v. Tankersley*, 537 F.3d. 1000, 1107 (9th Cir. 2008).

[9] See transcript of hearing on Defendant's Motion to Compel Discovery, February 20, 2019, page 25.

2

Mr. McRae's conviction is not in this instance a Federal crime of terrorism, because his conduct was not intended to intimidate, coerce, or retaliate against the government. His recommended guideline range without the enhancement, based on a criminal history category I and an offense level of 18 would be 37 to 46 months; however, even if the offense of conviction is not a Federal crime of terrorism, the guideline U.S.S.G. § 3A1.4(a) specifically recommends an upward departure, when the offense of conviction is included in the list of crimes that are Federal crimes of terrorism, but the defendant's intent is aimed at a non-governmental entity.[10] The low end of the recommended guideline range, based on Mr. McRae's original criminal history category of I with a total offense level increased by 12 levels for the upward departure, is 97 months.[11] The eight year agreed upon sentence reflects this upward departure.

Mr. McRae is asking that his criminal history category is changed to criminal history I. Changing his PSR to criminal history category I is essential for him to get a favorable placement in the Bureau of Prisons. It is also unreasonable to raise his category from zero points and category I to category VI.

## II. MITIGATING FACTORS THAT SUPPORT THE PROPOSED SENTENCE

### A.     Mr. McRae has serious medical issues.[12]

Mr. McRae has been diagnosed with a number of conditions since he has been incarcerated on these charges: abnormal serum enzyme level, cellulitis of the lower limbs, COPD, Hepatitis C, heart failure, GERD, atrial fibrillation, tachycardia, edema, and chronic back

---

[10] U.S.S.G. § 3A1.4, *Commentary, Application Note* 4(B).

[11] *See, e.g., Tankersley* at 1108.

[12] See U.S.S.G. § 5H1.4.

pain and shoulder pain.[13] These will all need to be managed in the Bureau of Prisons. His medical records from both ADC and Weber County Correctional Facility are attached to this memo[14] and have been provided electronically to Federal Probation. Defendant asks that these records be attached to his PSR.

**B.      Mr. McRae is a skilled craftsman.**

In 1988 Stephen got out of prison; he got married and never looked back. He was a skilled carpenter and remodeler. He started his own company in 1990; he was a millwork contractor with four to ten employees, making and installing interior carpentry in houses, generally high end homes.



This curvilinear staircase is an example of the kind of high end work that he did for the Dallas area architect and builder, Wilson J. Fuqua. In 2008 the economy collapsed, and his business,

---

[13] See paragraphs 76-79 of the PSR.

[14] The medical records from ADC and WCCF will be filed separately under seal as Exhibits A and B.

4

which had grown to include jobs in Washington as well as Texas, failed. Both his mother and father died that year within six months of each other. His father took care of his mother and Stephen took care of his father as he became more ill. All of his savings went into this effort. His siblings refused to help him either physically of financially. Since that time and throughout this past decade he has wandered the wilds of the West, living a very spare existence, but filled with joy at being in the outdoors.

These pictures show a kitchen that Stephen built for his accountant in her home. His friend in New Mexico, Richard Nicholds, describes Stephen as a skilled worker, a little nutty, but he's "the best friend I ever had." Stephen would like to live with the Nicholds and help take care of them, when he is eventually released from federal prison. They would welcome the opportunity to have Stephen live with them again.

### C.     Mr. McRae suffers from a mental or emotional condition.[15]

Mr. McRae has suffered with bipolar disorder.[16] He has treated it by trying to live a hard-working but quiet outdoor life. It has been harder for him to keep on an even keel, while he has been incarcerated.

### III. THE PROPOSED SENTENCE IS REASONABLE

Based on all of circumstances, a sentence of 96 months would be a sentence that is "sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a).

**§ 3553(a)(2)(A)**: The Government and Mr. McRae agree that 96 months is a just sentence for what has occurred in this case.

**§ 3553(a)(2)(B)**: There is very little general deterrent effect to be gained from lengthy prison sentences. It is the certainty of punishment, not "increases in the severity of punishments" that has a general deterrent effect.[17]

> No one doubts that having a system of punishment has crime-preventive effects. The important question is whether changes in punishments have marginal deterrent effects [. . . .] Imaginable increases in severity of punishments do not yield significant (if any) marginal deterrent effects.[18]

---

[15] Under U.S.S.G. § 5H1.3 the defendant's [m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.
**Error! Main Document Only.**

[16] See paragraphs 90-96 of the PSR.

[17] Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006); and see Cesare Beccaria, *Dei Dvincetti e delle Pene* (On Crimes and Punishment), first published in 1764 it remains to this day a vital work on the subject.

[18] Tonry at 28-29, *citations omitted*.

Mr. McRae's arrest, prosecution, and inevitable sentence serve as adequate warning to others that such activity has a serious consequence.

**§ 3553(a)(2)(C):** A 96 month sentence is a substantial period of incapacitation. A longer period of incarceration is not what is needed to accomplish the goal of lowering Defendant's risk of recidivism.

**§ 3553(a)(2)(D:** Mr. McRae hopes to live with his friends, the Nicholds, once he is released from prison. He will live simply and help them out as well as do other handyman type jobs in the community. He will enjoy reading, talking to friends, and the outdoors.

### IV.  REQUEST FOR RECOMMENDATIONS

Mr. McRae asks that the Court:

A. Waive any fine and the interest on restitution;

B. Order his medical records from ADC and Weber County Jail be attached to the PSR;

C. Order his mental health records not be attached to the PSR; and

Recommend to the Bureau of Prisons:

D. That he be medically designated based on the attached medical records; and

E. That he be designated to an appropriate Low Security facility.

RESPECTFULLY SUBMITTED this 18th day of July, 2019.

>/s/ Robert L. Steele
>ROBERT L. STEELE
>Assistant Federal Defender