JOHN W. HUBER, United States Attorney (#7226)
MARK K. VINCENT, Assistant United States Attorney (#5357)
TRINA A. HIGGINS, Assistant United States Attorney (#7349)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | Case No. 1:16-CR-566-TS |
|---|---|
| Plaintiff, | |
| v. | UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING MEMORANDUM. |
| STEPHEN PLATO MCRAE, | |
| Defendant. | |
| | Judge Ted Stewart |

The United States of America, by and through its counsel, respectfully submits this Response to Defendant's Objections to the Presentence Report and Sentencing Memorandum. (Ct. Docket #s 170 and 171.)  It is the position of the United States that the Presentence Report's inclusion of the terrorism enhancement, pursuant to USSG §3A1.4 (Presentence Report "PSR" at §44 (p.11.)) is applicable and should stand.  Additionally, the United States continues to stand by the Fed.R.Crim.P. 11(c)(1)(C) plea agreement for a 96 months prison sentence.

DISCUSSION

**A. The Presentence Report's inclusion of the terrorism enhancement, pursuant to USSG 3A1.4, is appropriate and should be contained in the final PSR.**

Defendant objects to the inclusion of USSG §3A1.4 (terrorism enhancement) his PSR. (Ct. Dockets # 170 at 1-3 and 171 at 2-3.)

A "federal crime of terrorism" requires two parts. One, the underlying crime must be a crime from a list of crimes described in 18 U.S.C. § 2332b(g)(5)(B). Second, the terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism…." (USSG §3A1.4(a).) Section 3A1.4's commentary states that a "federal crime of terrorism" has the same meaning given the term in 18 U.S.C. § 2332b(g)(5), which limits a "federal crimes of terrorism" to offenses that are "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." (*see* USSG §3A1.4, cmt. n. 1 and 18 U.S.C. § 2332b(g)(5)(A).)

Defendant stipulates that his conviction for violating 18 U.S.C. § 1366(a) [Destruction of an Energy Facility] is a violation that is on that enumerated list of offenses contained in 18 U.S.C. § 2332b(g)(5)(B). (Ct. Docket #s 170 at 2 and 171 at 2.) However, Defendant mistakenly argues that "there is no evidence in the record that the intended target of Mr. McRae's conduct was anything other than corporate America and the fossil fuel industry." (*Id.*)

In the instant case, Defendant admits to targeting and destroying the Buckskin electrical substation on September 25, 2016, near Kanab, Utah, that was owned and operated by Garkane Energy Cooperative. (Ct. Docket #165, §11 at 3.) Defendant also admits that he had targeted and destroyed three other electrical substations, to wit: the Libson Valley electrical substation, San Juan County, Utah, on April 1, 2015; the Quinn River electrical substation, Humboldt County, Nevada, on August 31, 2016; and the Baker electrical substation, White Pine County, Nevada on September 14, 2016. (Ct. Docket #165, §12(d) at 4.) All four of these attacks had wide spread effects of knocking out electrical power to entire communities, including government facilities, emergency services, hospitals, businesses, and residential properties which were being serviced by these electrical substations. Finally, the Defendant, at the time of his

arrest, was preparing to leave and commit another act of sabotage, "the grandmomma" as he described it, namely disabling a larger power substation in Nevada. (Exhibit 1 -- Confidential Source Recording dated 11-2-16 at 39.) And the Defendant also admitted that he was planning a "granddaddy" event that "will hit national news hard." (*Id.*) During conversation with the Defendant, the Confidential Human Source "CHS" began identifying an electrical substation near Moapa, Nevada, that "supplies everything in the world" and the Defendant said, "That is—this is part of my master plan too." (*Id.* at 40.) Defendant admitted that he'd done the research and said "I'm thinking of something big connected to it that's even bigger. See, if somebody just-I'm thinking—five in a row. Shut down the whole west coast. Five in a row, shut down the whole west coast. I think I can do it." (*Id.* at 41.)

It is surely uncontroversial that a crime can target a particular entity in corporate America, to wit: electrical substations, and be intended to provoke a reaction from the government or be committed to retaliate against government conduct.

During this investigation, Defendant, on multiple occasions, declared in essence that the government was controlled by corporate America. Referring to the Government causing problems, "It's because it is owned by corporate America." (Exhibit 2 -- Confidential Source Recording dated 10-28-16 at 41.) "You know, you know the free markets? So i-it plays. That's why—i-if you start looking just under the surface, you know that corporate America runs, you know, the United States. They just do." (Exhibit 3 -- Confidential Source Recording dated 10-27 and 28-16 at 43.) "It's easy to blame Clinton. It's easy to blame Obama. Corporate America controls politicians with money a-a-and that's the problem." (Exhibit 4 -- Confidential Source Recording dated 10-07-16 at 153.) Clearly the Defendant was concerned with "global warming" and his cause was to stop it. (Exhibit 5 -- Confidential Source Recording dated October 7, 2016

at 158; Exhibit 6 -- Confidential Source Recording Device 1 dated October 27-28, 2016 at 63, 67; and Exhibit 7 -- Confidential Source Recording dated November 1-2, 2016 at 22.)  Therefore, Defendant's crimes against "corporate America" were clearly an attempt to provoke a reaction from the government or retaliate against it so the government would adopt policies to stop "global warming."

Additionally, Defendant often commented that he was unhappy with the government as well as corporate America.  In fact, frequently he mixed and mingled the two.  For example, on November 2, 2016, the Defendant said:  "The whole-the whole Federal Government is about, uh, how would you say—facilitating, uh, business.  That is what it's really about, facilitating the electric companies, facilitating the-the oil companies, you know."  (Exhibit 8 -- Confidential Source Recording dated 11-2-16 at 15.)  On several occasions Defendant, regarding his intentions, declared that, "If there were ten of me right now, and I had one month, I think I could bring the United States to its knees."  (Exhibit 9 -- Confidential Source Recording Device 1 dated 10-27/28-16 at 63; *see also* Exhibit 10 -- Confidential Source Recording Device 2 dated 10-28-16 at 24, 35.)  Clearly, Defendant articulated the intention of his conduct to effect provoke a reaction from or retaliate against the government when he said:

> …if I had all the money and time I would bring the world to its… knees by myself. …all the nodes of civilized infrastructure are hot and have to be cooled.  Just wrap your mind around that.  The… NSA… all of them.  Goddamn you can take out a cell tower and y-you knock out the whole FBI….  The-well they can't communicate within a certain you know a hundred radius miles or fifty radius miles.  …Okay, cell towers, data centers, uh substations, God do I need to keep going on on how we[a]k it all is[?]"

(Exhibit 11 -- Confidential Source Recording dated 10-19-16 at 145.)

Courts have supported - albeit from jurisdictions outside the Tenth Circuit – the contention that the terrorism enhancement can apply to crimes targeting non-government entities. *See United States v. Wright*, 747 F.3d 399 (6th Cir. 20914) (Terrorism enhancement applied to

4

members of Occupy Cleveland movement who planned bombing of non-federal bridge where defendants expected that the government would respond to the bridge bombing: by taking new security measures, anticipated combat with law enforcement officers, and had other goals in mind, such as antagonizing the "one percent."); *United States v. Shazad* 1:10-cr-541-MGC (S.D.N.Y.) (Terrorism enhancement applied to defendant who attempted to kill civilians in New York City by bombing Times Square.); *United States v. Rahimi*, 1:16-cr-760-RMB (S.D.N.Y.) (Terrorism enhancement applied to defendant who attempted to kill and injure civilians by detonating bombs placed on public streets in the Chelsea neighborhood of New York City.); *United States v. Suarez*, 4:15-cr-10009-JEM (S.D. Fl.) (Terrorism enhancement applied where defendant attempted to detonate bombs on the beach in Key West, Florida, to target civilian beach goers.) To apply this "terrorism" enhancement a majority of courts have determined that the standard of proof is the preponderance of the evidence standard. *United States v. Fidse*, 778 F.3d 477, 481 (5th Cir. 2015); *United States v. Wright*, 747 F.3d 399, 407 (6th Cir. 2014); *United States v. Chandia*, 675 F.3d 329, 339 (4th Cir 2012).

In the instant case, Defendant's objective should not be neatly distilled into a single purpose. Although bringing harm to corporate America was unquestionably a core goal, the evidence shows that Defendant had bigger plans to affect government policy and direction. Defendant sought to inspire like-minded citizens to engage in similar violent conduct nationwide to coerce business and government officials to change their conduct towards global warming. (Exhibit 9 -- Confidential Source Recording Device 1 dated 10-27/28-16 at 63; *see also* Exhibit 10 -- Confidential Source Recording Device 2 dated 10-28-16 at 24, 35.) Therefore, the USSG §3A1.4 (terrorism) enhancement should apply in this case.

In the event that the Court should decide that the USSG §3A1.4 enhancement does not apply directly in this case, the United States agrees with the Defendant that USSG §3A1.4 Application Note 4 specifically recommends an upward departure in this case. (Ct. Docket #s 170 at 3 and 171 at 3.)

## CONCLUSION

For the foregoing reasons, the United States respectfully urges this Court to retain the USSG §3A1.4 (terrorism enhancement) in his Presentence Report and to sentence the Defendant to months.

DATED this _23d_ day of JULY, 2019.

JOHN W. HUBER
United States Attorney

_/s/  Mark K. Vincent_
MARK K. VINCENT
Assistant United States Attorney

_/s/  Trina A. Higgins_
TRINA A. HIGGINS
Assistant United States Attorney